# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

|                              |   |                          |
|------------------------------|---|--------------------------|
| In Re:                       | ) |                          |
| DENENE ELIZABETH BENNETT,    | ) | CASE NO. 07-05514        |
|     DEBTOR.                  | ) | Chapter 13               |
|                              | ) | Honorable Keith M. Lundin|
|                              | ) |                          |
|                              | ) |                          |

## MEMORANDUM

This matter is before the court on Citimortgage, Inc.'s objection to confirmation of the debtor's chapter 13 plan. Citimortgage argues that the plan impermissibly modifies the rights of Citimortgage in violation of 11 U.S.C § 1322(b). The debtor's plan attempts to treat the second mortgage claim of Citimortgage as unsecured, but Citimortgage claims there is value in the debtor's home preventing the debtor from stripping down the lien. The debtor contends there is no value greater than the first lienholder's claim therefore rendering Citimortgage an unsecured creditor. For the reasons hereinafter cited, the court OVERRULES Citimortgage's objection to confirmation.

The operative facts are largely undisputed. The debtor filed her chapter 13 bankruptcy petition on August 2, 2007. An amended chapter 13 plan was filed on August 28, 2007 that proposed to treat Citimortgage as an unsecured claim on the basis that the

value of the property securing the claim was less than the amount of the first lienholder's claim. The parties agreed that the first lienholder's claim amount is $124,872.46 and if the property value is less than this amount, then Citimortgage is an unsecured creditor. If however, the property is valued at even one dollar more than this amount, then Citimortgage's objection to confirmation should be sustained pursuant to 11 U.S.C. § 1322(b).

The Bankruptcy Court for the Southern District of Ohio in **In re Claar** explained the law that would determine Citimortgage's fate if it is rendered unsecured based upon the valuation of the debtor's residence:

> Section 506(a) states that
>
>> [a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest … is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property … and is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim.
>
> 11 U.S.C. § 506(a). A lien against property is void "[t]o the extent [such] lien secures a claim against the debtor that is not an allowed secured claim…." 11 U.S.C. § 506(d). "Where a creditor holds a second mortgage on a homestead valued at less than the debtor's secured obligation to a first mortgagee, … the holder of the second mortgage has only an 'unsecured claim' for § 506(a) purposes." **Lane v. W. Interstate Bancorp (In re Lane)**, 280 F.3d 663, 664 (6th Cir.2002). And "[i]f a claimant's lien on the debtor's homestead has no value at all … the claimant holds an 'unsecured claim' and the claimant's contractual rights are subject to modification" under § 1322(b)(2) of the Bankruptcy Code. **Id.** at 669. Five other courts of appeals and two bankruptcy appellate panels have joined the Sixth Circuit in holding that a wholly unsecured junior mortgage on the debtor's principal residence is not protected from modification by § 1322(b)(2). See **Zimmer**

> v. PSB Lending Corp. (In re Zimmer), 313 F.3d 1220 (9th Cir.2002); **Pond v. Farm Specialist Realty (In re Pond)**, 252 F.3d 122 (2d Cir.2001); **Tanner v. FirstPlus Fin., Inc. (In re Tanner)**, 217 F.3d 1357 (11th Cir.2000); **Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)**, 212 F.3d 277 (5th Cir.2000); **McDonald v. Master Fin., Inc. (In re McDonald)**, 205 F.3d 606 (3d Cir.2000); **Domestic Bank v. Mann (In re Mann)**, 249 B.R. 831 (1st Cir. BAP 2000); **Lam v. Investors Thrift (In re Lam)**, 211 B.R. 36 (9th Cir. BAP 1997). But see **Am. Gen. Fin., Inc. v. Dickerson (In re Dickerson)**, 222 F.3d 924, 926 (11th Cir.2000) (following **Tanner** because panel was bound by it but stating: "[W]ere we to decide this issue on a clean slate, we would not so hold. We find persuasive the district court's reasoning that providing 'anti-modification' protection to junior mortgagees where the value of the mortgaged property exceeds the senior mortgagee's claim by at least one cent, as prescribed by the Supreme Court's decision in **Nobelman v. American Savings Bank**, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), but denying that same protection to junior mortgagees who lack that penny of equity, places too much weight upon the valuation process.").

**In re Claar**, 368 B.R. 670, 674 -675 (Bankr. S.D.Ohio, 2007) (footnote omitted).

To avoid Citimortgage's second mortgage, then, the debtor must establish that the property is valued at less than the first mortgage holder's lien. In this case, the proof offered was dueling appraisers. As this court noted in another context:

> The valuation of property is an inexact science and whatever method is used will only be an approximation and variance of opinion by two individuals does not establish a mistake in either." **Boyle v. Wells ( In re Gustav Schaefer Co.)**, 103 F.2d 237, 242 (6th Cir.1939); see also **Rushton v. Commissioner**, 498 F.2d 88, 95 (5th Cir.1974) ("Valuation outside the actual market place is inherently inexact."); **In re Montgomery Court Apartments of Ingham County, Ltd.**, 141 B.R. 324, 337 (Bankr.S.D.Ohio 1992) ("Valuations of real property, like projections of income and expenses, are inherently imprecise. Opinions realistically may differ, depending upon the method of valuation used and the nature of assumptions adopted."); **In re Jones**, 5 B.R. 736, 738 (Bankr.E.D.Va.1980) ("True value is an elusive Pimpernel.").
>
> Because the valuation process often involves the analysis of

> conflicting appraisal testimony, a court must necessarily assign weight to the opinion testimony received based on its view of the qualifications and credibility of the parties' expert witnesses. See In re Coates, 180 B.R. 110, 112 (Bankr.D.S.C.1995) ("The valuation process is not an exact science, and the court must allocate varying degrees of weight depending upon the court's opinion of the credibility of … [the appraisal] evidence."). As noted by the Bankruptcy Court for the Southern District of Ohio in In re Smith 267 B.R. 568, 572-573 (Bankr.S.D.Ohio 2001), when "weighing conflicting appraisal testimony, courts generally evaluate a number of factors, including: … the appraiser's education, training, experience, familiarity with the subject of the appraisal, manner of conducting the appraisal, testimony on direct examination, testimony on cross-examination, and overall ability to substantiate the basis for the valuation presented." Id. (internal citations omitted). A bankruptcy court is not bound to accept the values contained in the parties' appraisals; rather, it may form its own opinion considering the appraisals and expert testimony. Id. at 573; see, e.g., In re Abruzzo, 249 B.R. 78, 86 (Bankr.E.D.Pa.2000) ("I am left to some extent with the proverbial battle of the appraisers. Finding merit to both their positions, the only conclusion I can reach is to find some value in between.").

In re American HomePatient, Inc. 298 B.R. 152, 173 -174 (Bankr. M.D.Tenn., 2003).

In this case, the debtor relied upon the expert testimony of appraiser Wayne Edmonson. Mr. Edmonson reviewed three comparables, two 2007 sales and one 2006 sale, and valued the property at $117,000. His testimony was that the market has undergone a downward turn and that, in his opinion, under the currently downward market, $117,000 was a fair valuation.

Citimortgage relied upon the expert testimony of Robin Williams. Mr. Williams disagreed that the market was in a downward turn, and according to his comparables, which included sales in the same subdivision up to 1½ years old, the debtor's property

is currently worth $130,000. Mr. Williams testified that he looked at 14 sales over the past five years in this subdivision and based on all of this data, the $130,000 is a fair estimate. His higher opinion is based in part on his reasoning that the debtor's home was more of a "custom home" for this subdivision and would bring a higher sales price and that the market was not slowing down for "arms length transactions."

Keeping in mind that valuation is not only a moving target, but also the "elusive Pimpernel," the court must, based on the most reliable proof, make a determination as to value. The court finds Mr. Edmonson's opinion to be better supported, and credits his testimony as to the value of the debtor's property. His testimony about the lack of stability in the marketplace was more persuasive. In addition, the comparables he relied upon were more reliable proof in this case based, in part, on their temporal proximity to the changing market conditions. Therefore, the court finds that the debtor's residence is valued at $117,000.

As such, the court finds that Citimortgage's lien is wholly unsecured. Accordingly, Citimortgage's objection to confirmation is hereby OVERRULED. Counsel for the debtor shall submit an order not inconsistent with this opinion within five (5) days of its entry.